*In re* ESTATE OF CHARLES ZENO—(BERTHA McMILLAN *et al.*, Petitioners-Appellants, *v.* LOUISE RAY *et al.*, Respondents-Appellees.)

(No. 55140;

First District—February 11, 1972.

*Rehearing denied March 14, 1972.*

138

Kranzler & Kranzler, of Chicago, (James B. Martin, of counsel,) for appellant.

Carey, Filter & White, of Chicago, (Edward P. Boland, of counsel,) for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

This appeal is taken from an order denying appellants' petition to reopen the estate of Charles Zeno for the purpose of correcting the table of heirship therein.

Charles Zeno (hereinafter referred to as "decedent") died intestate on December 19, 1964.

On January 6, 1965, on his own petition, the Public Administrator of Cook County was appointed administrator of decedent's estate and Letters of Administration were issued to him.

On January 19, 1965, Louise Ray, Barbara Beason (hereinafter referred to as "administrators") and Elphege Louis Daniel petitioned the court to revoke the Letters of Administration issued to the Public Administrator and to issue Letters to them. This petition stated that "Elphege L. Daniel," a non-resident of Illinois, was an heir of decedent and had nominated Ray and Beason as administrators. On that same date the court heard the testimony of Edward M. White, an attorney for the petitioners, to the effect that he acquired knowledge of the heirship and family of decedent through conversions with "Daniel" and Ray, whom decedent had held out to be his sister. Those conversations revealed that decedent was twice married but both wives predeceased

him and no children were born of either union, nor were any adopted. Decedent was the illegitimate child of Joseph Harrison and "Mary Daniels." Mary Daniels had no other natural born or adopted children but was one of ten children born of the union between Lusignow and Cecile Daniels. Six of Mary Daniels' brothers and sisters, including Elphege, never married or had any children. The others married and had children but those children died without issue before decedent. All of Mary Daniels' siblings except Elphege Louis Daniel predeceased decedent. The court found that decedent left "Elphege Louis Daniel, his maternal uncle, as his only heir at law and next of kin" and granted the relief sought, appointing them administrators and revoking the letters of administration to the Public Administrator.

On April 22, 1965, on motion of the administrators, the court ordered that a partial distribution of the estate be made to Elphege Louis Daniel.

On May 2, 1966, the administrators filed their final account of the estate of decedent which indicated that there was $21,610.30 on hand after the payment of expenses and the advance, and that this amount was distributed to Elphege Louis Daniel. Accompanying the final account were vouchers, one of which was for the amount of $21,610.30 and signed by "Louis Daniel."

On September 28, 1966, Bertha McMillian and Bessie Truehill Leverette (hereinafter referred to as appellants) petitioned the court to reopen the estate and to order the administrators and their surety to refund and redeposit all funds. This petition, sworn to by appellants, alleged that decedent left specified heirs [1] and that Louise Ray knew of their existence but knowingly and fraudulently withheld that information from the court.

On October 17, 1966, the administrators filed a motion to dismiss, alleging that the petition did not set forth any facts showing that the appellants are heirs of decedent, that the court lacked jurisdiction to reopen the estate, that the appellants are guilty of laches, that the petition did not set forth facts constituting fraud and that the petition did not set forth any grounds for relief against the surety.

On October 31, 1966, the appellants moved that the court order the administrators and their surety to redeposit all funds into the estate. In support of that motion an affidavit of Bertha McMillian was filed listing the sole surviving heirs of decedent. That affidavit stated decedent's mother, "Mary Daniels Zeno" who died in 1898, had one brother, "Louis Daniels," who would be 106 years old at the time, and a sister Aurelia Zeno, who married but had no children. The affidavit

---

[1] The alleged heirs listed in appellants' petition did not include Elphege L. Daniel.

further stated that decendent's father had five brothers and sisters two of whom had no children, two others died leaving two surviving children each and the last had six children, one being the affiant and another who had died leaving two surviving children.

An amended petition, filed by appellants on December 19, 1966, with leave of court, stated that the verified petition of Elphege Louis Daniel for the appointment of the administrators falsely and fraudulently alleged that Daniel was the maternal uncle and sole surviving heir of decedent. Additionally, the petition alleged that the administrators withheld information of appellants' relationship to the decedent.

On January 16, 1967, the administrators moved that the court dismiss the amended petition. This motion was in substance the same as their motion of October 17, 1966.

On January 23, 1967, the amended petition was stricken and the court granted appellants leave to file a second amended petition.

On July 19, 1967, appellants moved that the court reopen the estate and allow them to testify to the true and correct heirship of decedent for purposes of amending the table of heirship.

On July 31, 1967, the administrators moved to dismiss alleging the same grounds as their motion of October 17, 1966.

After numerous continuances a hearing was had on March 3, 1970. At that hearing appellants' attorney informed the court that he was going to establish the heirship and then demonstrate how the administrators perpetrated fraud. After the court indicated that it did not want to make a finding of heirship and counsel for the administrator said, "Your Honor, I think a finding on heirship is a basic part of the plaintiff's case in this matter, because they have to establish heirship in order to get any relief.", a discussion was held off the record. After that discussion Bertha Zeno McMillian testified that her father and decedent's father were brothters and Bessie Leverette's mother and decedent's father were brother and sister. The witness did not know "Elphege Louis Daniels" but he was not an heir of decedent and his status as such was fraudulently procured. Decedent was born in 1893 in Louisiana and after his discharge from the army in 1919 came to Chicago and lived in the witness' father's house. He married twice but had no children. Louise Ray was a former tenant of decedent and knew of his financial condition. "Louis Zeno" died in 1915.[2] A conversation with "Elphege Louis Daniels" established that he knew the witness' mother and father but was ignorant of various family facts. The courtt then stated, "I think you have told

---

. [2] A prior affidavit filed in this cause stated that "Louis Daniels" was decedent's maternal uncle.

us enough now." and cross-examination began. On cross-examination the witness stated that decedent's mother and father were Mary Daniels Zeno and Joseph Aristile Zeno but the witness did not have a copy of their marriage license. Decedent was born in 1893 but his Baptism certificate was not found. The witness learned of decedent's passing in December of 1964 and in June, 1965, while the estate was open, witness hired an attorney and informed him of what had transpired but the attorney did nothing.

The witness was excused and the following colloquy took place:

"MR. COSTIGAN [Appellant's Attorney]: That's our case, your Honor. You have indicated we should proceed on fraud. This lady testified as to relationship to the decedent. She was raised with him, knew him all his life, he was at her house. The man in New Orleans, who is purportedly the heir, is a complete stranger, according to her, and the lady who became the administrator was not related to the decedent and she dug this heir up in New Orleans.

THE COURT: Well, let me consider this. Will you gentlemen have this written up?

MR. WHITE [Administrators' Attorney]: Yes; very well. I move the Court for a finding on behalf of defendant.

THE COURT: I'll hear that after I see the transcript."

The court, in its order of April 20, 1970, denying appellants' petition, found: 1. that appellants had failed to establish that they were heirs of decedent or that the table of heirship should be set aside, 2. that the appellants have failed to establish the existence of fraud or mistake or any fact which would give the court jurisdiction to set aside the original order under section 72 of the Civil Practice Act, and 3. that the appellants were guilty of laches for failing to bring the action during the pendency of the estate or within 30 days after it was closed.

On May 11, 1970, appellants moved that the court vacate the order of April 20, 1970, and that further proceedings be had on the petition to reopen the estate. This motion alleged in substance: 1. that the hearing was not intended to be a full hearing but was merely to aid the court in determining the direction of further proceedings, 2. that the order was a finding of heirship in contradiction of the court's previous statement that such would not result from that hearing, 3. that the court could not find that petitioners have failed to establish any fact which would give the court jurisdiction under section 72 because the appellants did not have an opportunity to present their entire case. 4. that the question of laches was not raised in testimony or argument and appellants did not have an opportunity to present testimony and argue on that point, and 5. that the estate of Louis Daniel is pending in probate court and

Louise Ray is sole beneficiary of a will executed by Daniel. The court denied this motion and appellants perfected an appeal to this court.

*Opinion*

■■ Appellants' verified petition to have the estate reopened for the purpose of allowing further testimony of the heirship of decedent was filed in the same proceeding and within two years from the closing of the estate. Because this petition was based upon alleged fraud of the administrators, it was sufficient to be considered a petition for relief under Ill. Rev. Stat. 1965, ch. 110, par. 72. *See Sunderland v. Future Investments, Inc.* (1970), 120 Ill.App.2d 361, 365-366.

■■ As stated in *Estate of Arcicov* (1968), 94 Ill.App.2d 122, 126-127, section 72 is the appropriate vehicle for appellants to use in their attempt to reopen the estate for the purpose of amending decedent's table of heirship. There the trial court allowed the table of heirship to be amended after the estate had been closed. The Appellate Court; although it reversed because the petition for relief was filed after the statute of limitations [3] had run, approved of the use of section 72 in such instances. The court at page 126 and 127 quoted from *In Re Application of Smith* (1964), 49 Ill.App.2d 189, 194-195 which stated:

"We are aware that sec 72 may not be employed to resurrect and re-try issues previously adjudicated by valid means. But where a judgment is obtained by fraud, recourse may be had to sec 72 and thereunder the court has power to grant relief * * *. 'If the order was obtained by fraud, as petitioner alleges, elementary principles of law require that relief be granted.' "

■■ Additionally, if appellants are to avail themselves of the relief sought it is essential for them to establish that they were not at fault and exercised due diligence prior to the entry of the order which they seek to vacate. *See Brockmeyer v. Duncan* (1960), 18 Ill.2d 502, 505 and *Weaver v. Bolton* (1965), 61 Ill.App.2d 98, 105.

At the hearing of March 3, 1970, the court indicated its hesitation to take evidence relating to the heirship of decedent. However, after a statement by counsel for the appellants that he intended to dmonstrate first the heirship of decedent and then fraud on the part of the administrators, a statement by counsel for the administrators that appellants must establish heirship in order for them to get any relief, and a discussion off the record, the court proceeded to take evidence relating to decedent's heirship. Thereafter, counsel for appellants indicated that he next would proceed, in accordance with the court's wishes, to present evidence on the question of fraud. The court, however, expressed its

---

[3] Ill. Rev. Stat. 1965, ch. 110, par. 72(3).

desire to consider the evidence of heirship separately and asked the litigants to have a transcript prepared to aid him in his consideration of decedent's heirship. There was no hearing had on the question of fraud prior to the entry of the order of April 20, 1970, although the parties and the court had seemingly agreed upon a mode of procedure whereby evidence relating to both the heirship of decedent and fraud of the administrators would be presented and in spite of the fact that a controversy existed with respect to the existence of fraud and other matters raised by the administrators' motion to dismiss.

██ This action of the court in unduly limiting the scope of the hearing was improper. See *Chapman v. Huttenlocher* (1970), 125 Ill.App.2d 39, 46; *A. C. Allyn & Co. v. Tager* (1966), 78 Ill.App.2d 228, 233 and *Wilson v. Wilson* (1965), 56 Ill.App.2d 187, 195.

While not expressing any view on the merits of appellants' petition we reverse and remand this cause for a full and proper hearing as to both heirship and fraud since they are allegedly interrelated, and for such further proceedings as may be necessary but not inconsistent with the views herein expressed.

Reversed and remanded with directions.

DRUCKER and ENGLISH, JJ., concur.