**Lois Chapman and Donald A. Chapman, Plaintiffs-Appellants, v. Larry Huttenlocher, Defendant-Appellee.**

Gen. No. 69–195.

Second District.

June 12, 1970.

Rehearing denied July 13, 1970.

40

James L. Coburn, of Chicago, and Knight, Ingrassia & Schirger, of Rockford, for appellants.

Bert P. Snow, of Freeport, for appellee.

JUSTICE THOMAS J. MORAN delivered the opinion of the court.

This is an appeal from a judgment order entered after trial upon the issues raised by a motion to dismiss the complaint pursuant to section 48 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 48(1)(e)). The defense asserts that counts I and II of the complaint are barred by the two-year statute of limitations applicable to personal injury claims.

The cause of action in question arose on December 29, 1963. Suit was instituted on January 26, 1966—28 days after the two-year statute of limitations had expired. A motion to dismiss counts I and II of the complaint was filed by the defendant. Thereafter, affidavits in support of the motion were filed by two insurance representatives for the defendant's insurer. Counteraffidavits were filed by Lois Chapman, Donald Chapman, and their attorney. On April 4, 1967, the trial court denied the motion to dismiss counts I and II, without prejudice, with the observation that a fact question was raised by the affidavits and counteraffidavits.

On July 28, 1969, the motion to dismiss counts I and II were heard before the court, all parties having waived a jury. After hearing the testimony, the court filed an order on August 1, 1969, finding that the issue in dispute was whether or not the defendant's insurance carrier, Country Mutual Insurance Company (Company), had waived the right to plead the statute of limitations.

The court found that the defense of the statute of limitations was available to the defendants and that the insurer was not estopped to assert the statute of limitations. Counts I and II were dismissed and barred from further action.

It is not necessary to detail all of the evidence presented for our determination of the case. Briefly, the auto accident in question occurred on December 29, 1963. The following day, adjuster Gaunt of the Company, spoke with the plaintiffs and the insured defendant. In June of 1964, he called upon the plaintiffs and was referred to their attorney. Thereafter he contacted the plaintiff's attorney on a more or less two-month schedule. In February of 1965, plaintiff's attorney, Gaunt, and Claim Supervisor Burke, met in the attorney's office. The attorney had no medical bills or medical reports in regard to Mrs. Chapman's claim but indicated that he intended to file suit. After some discussion, the Company made an offer of $2,000 for the bodily injury claim of Mrs. Chapman and the property damage claim of Mr. Chapman. The Company was told that the clients were to be contacted and they would be advised whether or not the $2,000 offer would be accepted. In May of 1965, the attorney contacted Gaunt and rejected the offer.

In August of 1965, Gaunt testified, he had another conversation with the attorney. The attorney indicated that the client wanted him to go ahead and start suit. The adjuster stated that if he could get the bills, medical reports and a medical examination, he would like to try and settle the case. If Mrs. Chapman agreed to the medical examination, he was to make the appointment. In November of 1965, the adjuster testified, he was told that Mrs. Chapman would not agree to a medical examination, but that the attorney would talk with her again to see if she would agree. The next contact he had with the attorney was sometime in January of 1966, after the stat-

ute had run. At that time the adjuster was living in Pekin, Illinois, having been transferred from Jo Daviess County in December of 1965.

The attorney for the Chapmans testified that on December 8, 1965, he met with Gaunt in the attorney's office and agreed that he would provide his client for a medical examination and that Gaunt was to make all of the arrangements. The adjuster was to advise the attorney of the time and date of the appointment, but he never called the attorney again.

The attorney testified that on January 12, 1966, he made a call to Gaunt's former home in Jo Daviess County and was informed that he had been transferred to Pekin, Illinois. On that date he contacted the adjuster at his home in Pekin, and was told by the adjuster that he no longer had authority to handle the file, but referred him to the Company's adjuster who had succeeded him in Jo Daviess County. On January 17, 1966, the attorney talked with Supervisor Burke, who advised him that the Company would not waive the statute of limitations defense. The substance of the conversation between the attorney and Burke is disputed. The attorney testified that Burke told him that the Company was no longer interested in making any appointment with the doctor to see Mrs. Chapman and that he was going to make an offer of $575 based upon the fact that there was $350 in property damage to Mr. Chapman's automobile and an estimated $225 in medical bills which had been incurred treating Mrs. Chapman. The attorney rejected this offer, allegedly, but Burke was alleged to have told him that he would send him the papers anyway. On January 17, 1966, Burke forwarded a letter enclosing general releases for Mr. and Mrs. Chapman in the sum of $575.

Burke's version of the January, 1966, telephone conversation was that he returned the call of the attorney, who advised him that his clients were now willing to ac-

cept the $2,000 previously offered. Burke stated that the statute of limitations had run, to which the attorney replied, "You wouldn't hide behind the statute, would you?" Burke replied that he would, but in a spirit of compromise he would pay the property damage, upon which the statute had not run, in the amount of $350 and an estimated sum of $225 for Mrs. Chapman's medical bills. Thereupon, the releases in the sum of $575 were forwarded to the attorney on January 17, 1966.

Plaintiffs rely upon defendant's exhibit #2 which is a memo to Burke from Gaunt, dated November 24, 1965, produced from the file of the Company, which states:

> "Today I saw attorney . . . in regards to Lois Chapman. He advised he has not seen her for a while, but she's still doctoring and complaining.
>
> "I asked him to see if she would submit to an independent medical exam by Dr. Kernwein at Rockford. He advises he would ask her and let me know. I will then make an appointment for her if she agrees to it.
>
> "He still does not have any bills yet.
>
> "I wonder if we would not re-contact him again, if the Statute might pass, before he would get around to filing a law suit. I believe we should wait until he contacts us."

The exhibit was admitted into evidence and considered by the court.

Gaunt testified that he told the attorney that if they could get some medical information, this claim was one that they would try to settle. Supervisor Burke testified that at the February, 1965 meeting with the attorney, he stated the same thing in that the claim "was a case we wanted to settle." The attorney testified that the Com-

44

pany representatives told him that the Company was liable for the damages caused by this accident.

The plaintiffs complain that the court erred in failing to rule that the conduct of the defendant's insurer constituted a waiver of the two-year statute of limitations. It is contended that the conduct of the Company lulled the plaintiffs' attorney into refraining from suit because liability was admitted, the attorney was told that the insurer wanted to settle the suit if at all possible, there were negotiations and efforts at settlement before the expiration of the statute, and because the insurance adjuster had received some medical reports from the treating physician.

██ ██ It is the law of this State that the mere pendency of negotiations during a part of a period involved in the statute of limitations, conducted in good faith, with a view to a compromise, is not a waiver of the statute of limitations and would not estop a defendant from setting up such defenses. Only conduct of an insurance company which induces a plaintiff to a reasonable belief that his claim will be settled without suit, constitutes a waiver by estoppel to the raising of the defense of the statute of limitations. Kinsey v. Thompson, 44 Ill App2d 304, 307, 194 NE2d 565 (1963).

In the Kinsey case, negotiations proceeded both before and after the period of the statute of limitations had run. The court held that this act, in and of itself, was not enough to determine as a matter of law, that the defendant was estopped from asserting this statute, but that the cause should be submitted to a jury for a determination.

The recent case of Suing v. Catton, 118 Ill App2d 468, 254 NE2d 806 (1970), reaffirmed the rule that investigation of a claim and negotiations for a settlement do not amount to waiver by estoppel unless there is contained in such conduct that which is calculated to lull the claimant into a false sense of security. The court reversed the

trial court's ruling sustaining the defendant's motion to dismiss the complaint, which was not supported by affidavits. The opinion directed that a jury should determine whether or not a waiver by estoppel had been established, which would prevent the defendant from raising the defense of the statute of limitations.

Plaintiffs also cite the case of Devlin v. Wantroba, 72 Ill App2d 383, 218 NE2d 496 (1966), for the proposition that if liability is conceded and the plaintiff's attorney is advised that the insurer wants to settle the claim and settlement negotiations are undertaken after the insurer has medical reports, the insurer cannot assert the statute of limitations. We do not understand that case or any Illinois case to set out such a specific formula. The Devlin case held that the plaintiff's affidavits, the only affidavits filed in the case, raised no substantial question as to whether any conduct of the defendant or his insurer was calculated to lull the plaintiff into a false security, or in fact, had that effect. The affidavits were insufficient in law to raise a question of waiver or estoppel to be passed upon and therefore the judgment of the trial court granting the defendant's motion to dismiss was affirmed.

██ The affidavits supporting the motion to dismiss must allege or establish facts which will authorize the court to find that the motion is well founded in fact. If a material and genuine disputed question of fact is raised, the court must decide the motion only after considering the affidavits and taking evidentiary testimony offered by the parties upon a hearing, in a nonjury case. Section 48(3) of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 48(3)). We know of no better method whereby the parties can fully present the issues. Sabath v. Morris Handler Co., 102 Ill App2d 218, 231, 243 NE2d 723 (1968). Where such motion is addressed to the court and a jury demand has been made, the issues should

46

be tried and determined by a jury prior to and separate from the trial of the issues in the cause of action pleaded. Kinsey v. Thompson, supra, 308.

■■ In the present case the motion to dismiss was tried before the court, after the parties waived their jury demand. The court heard and saw the witnesses. Upon appeal we are required to review cases not only as to the law, but also as to the facts, and it is our duty to review the evidence and to reverse the verdicts of juries or judgments of trial courts whenever we find such verdicts or judgments clearly against the manifest weight of the evidence. Manifest means: clearly evident, clear, plain, or undisputable. Elgin Lumber & Supply Co. Inc. v. Malenius, 90 Ill App2d 90, 97, 232 NE2d 319 (1967).

We are unable to find in this case that the conduct of the defendant's insurer lulled the plaintiff into a false sense of security or induced a reasonable belief that the cause would be settled and the statute of limitations not asserted. The plaintiffs claim that the memorandum makes it clear that Gaunt was hoping that plaintiff's attorney would rely on the settlement negotiations and not file suit. This memorandum was competent evidence for the court to consider, along with all the other facts and circumstances in evidence.

■ When the evidence is considered as a whole, we are unable to say that the decision of the trial court was against the manifest weight of the evidence.

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.