Docket No. 104000.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MD ELECTRICAL CONTRACTORS, INC., Appellee, v. FRED ABRAMS *et al.*, Appellants.

*Opinion filed April 3, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald, Kilbride, and Karmeier concurred in the judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justice Burke.

## OPINION

Plaintiff, MD Electrical Contractors, Inc., filed suit against defendants Fred and Carol Abrams, under a theory of *quantum meruit* to recover for services that it rendered as a subcontractor on defendants' home improvement project. Defendants moved to dismiss the case pursuant to section 2–619 of the Code of Civil Procedure (Code) (735 ILCS 5/2–619(a)(9) (West 2006)), alleging plaintiff's failure to comply with the Home Repair and Remodeling Act (Act) (815 ILCS 513/1 *et seq.* (West 2006)) barred plaintiff's recovery. The circuit court of Du Page County dismissed the case. Plaintiff appealed and the appellate court reversed and remanded, holding that the Home

Repair and Remodeling Act does not apply to subcontractors. 369 Ill. App. 3d 309.

This court allowed defendants' petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315). Defendants assert on appeal that: (1) the Home Repair and Remodeling Act applies to subcontractors and plaintiff is, therefore, precluded from recovery because it did not comply with the terms of the Act; (2) regardless of the applicability of the Act to subcontractors, plaintiff is prohibited from recovery under *quantum meruit* because there was no direct relationship between plaintiff and defendants. For the reasons stated below, we affirm the judgment of the appellate court.

BACKGROUND

On November 2, 2005, plaintiff, an Illinois corporation, filed its first amended complaint, which is the subject of this case. Plaintiff alleged that from June 6, 2004, through October 1, 2004, it was a subcontractor that provided labor, electrical equipment, and materials (which we collectively refer to as "services") toward the remodeling of defendants' residence in Naperville, Illinois. Plaintiff alleges that it provided services to defendants on a nongratuitous basis; defendants accepted, received, and enjoyed the benefits of these services; and these services had a value of $14,984. Plaintiff has not been compensated for its services. The complaint did not identify a theory of liability, but merely pled the facts above as well as the fact that no contract existed between defendants and plaintiff to govern the method of payment for plaintiff's services.

Defendants filed a motion to dismiss pursuant to section 2–619 of the Code, alleging that the services performed by plaintiff fell within the Home Repair and Remodeling Act and that the plaintiff had failed to comply with the Act. Thus, defendants asserted, plaintiff could not recover because the court could not imply a contract where the Act would prohibit one. Defendants relied upon the following provisions of the Home Repair and Remodeling Act: section 5 (policy), section 10 (definitions of "home repair and remodeling" and "person"), section 15 (requirements of written contracts and the contents thereof), section 20 (the consumer rights brochure), and section 30 (unlawful acts). 815 ILCS 513/5, 10, 15, 20, 30 (West 2006).

-2-

Plaintiff countered that the Act does not apply to subcontractors. The basis for this assertion was the Act's focus on communications with the homeowner. Plaintiff asserted that because subcontractors generally do not have significant interaction with the homeowner, the Act could not be meant to apply to them. In support of its argument, plaintiff attached a copy of an affidavit of Michael J. O'Brien, MD Electrical's president. The affidavit averred that plaintiff was hired by and had a contract with Apex Builders, Inc., a general contractor (Apex is not a party to this litigation), and that prior to commencing work on June 6, 2004, plaintiff conducted a walk-through of the job site. During the walk-through, defendants approved the plans, authorized the work to begin, and requested additional services that were not part of the original plan.[1] Plaintiff performed these services, and defendants have retained the full benefit of these services without having paid for them.

The circuit court, after considering the above arguments and ascertaining that plaintiff's theory of liability was *quantum meruit*, granted defendants' motion to dismiss. In the process of dismissing the complaint, the trial court asked plaintiff: "[Q]*uantum meruit* is a contract that's implied, and how can the court imply a contract when the law prohibits one?" At plaintiff's request, the trial court clarified that its finding was that "to grant the relief that [plaintiff is] saying would be under *quantum meruit* would be in derogation of statute and a clear legislative pronouncement contrary." The court concluded by saying that plaintiff could either amend the complaint or the court could issue a finding under Supreme Court Rule 304 (210 Ill. 2d R. 304) so that plaintiff could take an interlocutory appeal. Plaintiff requested the Rule 304 finding and appealed.

---

[1]Before this court, neither party has claimed that plaintiff was anything other than a subcontractor. Accordingly, we do not review and make no determination of the truth or falsity of this statement. It is worth noting that to the extent that plaintiff has contracted directly with defendants for services which were not included under the contract between plaintiff and the general contractor, plaintiff may have ceased to act as a subcontractor. However, such a determination is a factual question and beyond the scope of this opinion.

Plaintiff presented two issues to the appellate court: first, plaintiff argued that the Home Repair and Remodeling Act does not apply to subcontractors; second, even if the Act does apply to subcontractors, plaintiff was not precluded from recovering in *quantum meruit*. The appellate court agreed with plaintiff's first contention, finding that the Act does not apply to subcontractors. As such, the court reversed and remanded the cause without reaching the issue of whether recovery is available in *quantum meruit* even if the Act applies. 369 Ill. App. 3d at 317.

In their petition for leave to appeal to this court, defendants raised, as the sole issue, the application of the Act to subcontractors. However, in their brief to this court, defendants raise a second issue, namely, whether subcontractors are able to recover in *quantum meruit* or any direct action outside the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2006)).

As to the first issue, plaintiff maintains that the language is ambiguous. In response to the second issue, plaintiff contends that this question is forfeited because the issue was not raised in the defendants' statement of points relied upon in the petition for leave to appeal, as required by Supreme Court Rule 315 (210 Ill. 2d R. 315).

ANALYSIS

I

This is a case of first impression and requires this court to examine the meaning of the Home Repair and Remodeling Act with respect to subcontractors. As this case is one of statutory interpretation, the standard of review is *de novo*. *Harshman v. DePhillips*, 218 Ill. 2d 482, 490 (2006).

It should be noted at the outset that the use of general contractors and subcontractors is a common business practice in the home repair and remodeling industry. This relationship usually entails a homeowner contracting with a general contractor to oversee a specific project, such as an addition to a home. The general contractor acts as a project manager and may in turn contract with other individuals or tradesmen to perform certain duties, for instance the plumbing or masonry. The general contractor, in its managerial capacity, insures

that each task is performed in the proper manner and order. The homeowner pays the general based on the terms of their agreement. The general contractor in turn pays the subcontractors based on the agreements that they formed. Thus, the hallmark of a subcontractor is that he works for the general contractor and not for the homeowner or business owner. This practice alleviates much of the burden on the homeowner of coordinating a construction project. It ensures that the homeowner does not have to know enough about construction to ensure that the plumber roughs in the plumbing before the drywall contractor hangs the sheet rock that obscures the wall cavity where the pipes were to be run. It also allows the homeowner to deal with only one person or company and not to have to contract with or supervise every aspect of the project. This common understanding of the general contractor/subcontractor relationship is critical to the understanding of the Home Repair and Remodeling Act.

The process of statutory interpretation is firmly established. The goal is to ascertain and give effect to the intent of the legislature. The simplest and surest means of effectuating this goal is to read the statutory language itself and give the words their plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). However, it is not sufficient to read a portion of the statute in isolation. We must, instead, read the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *Gill v. Miller*, 94 Ill. 2d 52, 56 (1983). Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to other tools of statutory construction. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 255 (2004). Generally, the language of a statute is considered ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *In re B.C.*, 176 Ill. 2d 536, 543 (1997).

In the present case, we are asked to decide whether and to what extent the Home Repair and Remodeling Act applies to subcontractors. We begin with the language of the Act itself. The Act requires that "a person engaged in the business of home repair or remodeling shall furnish to the customer for signature a written contract." 815 ILCS 513/15 (West 2006). This contract must meet certain disclosure requirements including cost and business name

(815 ILCS 513/15 (West 2006)), and the "person" must give the homeowner notice of any arbitration clauses or jury waivers. 815 ILCS 513/15.1 (West 2006). Further, the Act requires that "any person engaging in the business of home repair and remodeling shall provide to its customers a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet prior to the execution of any home repair and remodeling contract," the text of this brochure appears in the statute itself. 815 ILCS 513/20 (West 2006). The Act specifies that it is "unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs *** before obtaining a signed contract or work order [for] over $1,000." 815 ILCS 513/30 (West 2006).

The next stage of analysis looks to the definitions provided within the Act. "Person" is defined in section 10 of the Act as "any individual, partnership, corporation, business, trust, or other legal entity." 815 ILCS 513/10 (West 2006). "Home repair and remodeling" is defined as "the fixing, replacing, altering, converting, modernizing, improving, or making of an addition to any real property primarily designed or used as a residence other than maintenance, service, or repairs under $500. 'Home repair and remodeling' includes *** electrical wiring ***." 815 ILCS 513/10 (West 2006).

For the purposes of the case at bar, plaintiff does not dispute that it was engaged in home repair and remodeling work at defendants' place of residence. Further, the parties do not dispute that the work plaintiff performed, had it been done by a general contractor or in direct relationship to the homeowner, would fall squarely within the Home Repair and Remodeling Act. Finally, plaintiff does not claim that it attempted to comply with the Act. Instead, the question is whether, by nature of plaintiff's being a subcontractor, the Act applies in a way that prohibits plaintiff from recovering from the homeowners because it did not comply with the Act.

Defendants argue that the Act is unambiguous in its use of the term "any person," which, they contend, clearly includes subcontractors. Plaintiff contends that the Home Repair and Remodeling Act was designed to regulate the communications between contractors and the consumer/homeowner. Thus, because subcontractors typically do not have significant direct

communications with homeowners, the Home Repair and Remodeling Act cannot apply to them.

The text of the Act lends support to plaintiff's position. Section 5 states that the "General Assembly recognizes that improved communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers will increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices in that business in this State." 815 ILCS 513/5 (West 2006).

The text of the consumer rights brochure that must accompany a contract also militates against a reading that includes subcontractors. Under the "contracts" section of the brochure, item 10 states, "Remember, homeowners should know who provides supplies and labor for any work performed on your home. Suppliers and subcontractors have a right to file a lien against your property if the general contractor fails to pay them. To protect your property, request lien waivers from the general contractor." 815 ILCS 513/20 (West 2006). The sections of the Act that precede the consumer rights brochure prescribe that the "person engaged in the business" must include in its contract with the homeowner its business name and address. If the "person" uses a post office box, then that "person" must give the address of their personal residence as well. 815 ILCS 513/15 (West 2006). It is doubtful that the legislature would include language in the consumers' rights brochure that warns homeowners to "know who provides supplies and labor" if the legislature intended that everyone, subcontractors included, individually comply with the Act.

However, defendants argue that the statute is unambiguous and applies to plaintiff. They note that plaintiff's complaint states that it is an Illinois corporation with its principal place of business in Illinois. Corporations are specifically listed in the definition of "person." 815 ILCS 513/10 (West 2006). Thus, they argue plaintiff falls within the statute's meaning of "person." Likewise, the work performed by plaintiff clearly falls within the meaning of home repair or remodeling as provided in the statute. Furthermore, plaintiff alleges that the value of its services was $14,984, well in excess of the $1,000 minimum contract required by the Act. The Act makes no mention of, or distinction between, contractor and subcontractor.

Instead it repeatedly refers to "any person." Thus, according to defendants, the plain language means that plaintiff is a "person engaged in the business of home repair and remodeling" and is, therefore, bound to comply with the Act. Thus, defendants argue that the statute unambiguously applies to all subcontractors, including plaintiff. Plaintiff argues that the statute is ambiguous and is meant to exclude subcontractors. We are not persuaded by either approach.

Instead of adopting either the defendants' or plaintiff's argument, this court recognizes that "[s]tatutes should be read as a whole with all relevant parts considered." *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). When the Home Repair and Remodeling Act is considered in its entirety, it is clear that the statute unambiguously applies only to those who directly contract with a homeowner.

The entire focus of the Act is on regulating the direct contact and contracting between the "person" and the homeowner or consumer. Section 5 of the Act sets forth the policy statement of the General Assembly in enacting the Act. It states in relevant part, "[T]he business of home repair and remodeling is a matter affecting the public interest. *** [A]ccurate representations between persons engaged in the business of making home repairs or remodeling and *their consumers* will increase *consumer* confidence ***." (Emphases added.) 815 ILCS 513/5 (West 2006). Subcontractors, by virtue of their working for a general contractor, do not make "representations" to a homeowner. Thus, consumer confidence cannot be enhanced through the regulation of subcontractors as their business practice is not one that engages the consumer/homeowner.

The conclusion that the Act applies only to those who contract directly is further supported by section 15 of the Act. Section 15 specifies the contents of the contract that the "person" is to provide to the homeowner. Section 15 states, "Prior to initiating home repair or remodeling work *** a person engaged in the business of home repair and remodeling shall furnish to the *customer* for signature a written contract *** that states the *total cost* ***." (Emphases added.) 815 ILCS 513/15 (West 2006). Subcontractors do not directly contract with a homeowner/customer so this section cannot apply to them. Further, section 15 says that the contract must contain the "total cost." "Total cost" is in reference to the total cost of the project, not the cost of each individual subpart of the project.

In addition, section 15.1 prescribes notice be given to a consumer if the contract presented requires a consumer to submit all disputes to arbitration, or waive the right to a jury trial. It states:

> "A person engaged in the business *** that prepares or presents a written offer for home repair and remodeling to a consumer, shall advise the consumer, before the contract or agreement is accepted and executed, of the presence of any contractual provision that requires the consumer to: (i) submit all contract or agreement disputes to binding arbitration *** and (ii) waive his or her right to a trial by jury." 815 ILCS 513/15.1(a) (West 2006).

Further, aside from the point that a subcontractor does not prepare or present a "written offer for home repair and remodeling to a consumer," there is the negotiations clause that appears in subsection (b). Section 15.1(b) notes that if a consumer rejects either or both of the above clauses, that this shall be treated as a counter offer. 815 ILCS 513/15.1(b) (West 2006). Clearly, this section applies to those who contract directly with the homeowner. It cannot be read to include subcontractors. Subcontractors do not negotiate with a homeowner, they do not present written contracts to a homeowner, and they are certainly not in a position to accept counter offers. A subcontractor's relationship is with the general contractor. The subcontractor's presence or absence on a job site is accordingly based on the contract and relationship formed with the general contractor and not with the homeowner.

Finally, section 20 of the Act also supports the exclusion of subcontractors from the Act. Section 20 states that a person engaged in the business must "provide to *its customers* a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet prior to the execution of any home repair and remodeling contract." (Emphasis added.) 815 ILCS 513/20 (West 2006). The customer of a subcontractor is the general contractor, not the homeowner. It would make no sense to provide a "consumer rights" brochure to the general contractor. The general contractor is not a consumer.

Defendants maintain that a proper reading of the Act merely requires a subcontractor to comply with the Act if it wants to preserve the right of direct action against the homeowner. Preserving a right of action, however, is not the sole focus of the Act. The Act also

regulates liability for failure to comply with its terms. The enforcement provisions use the same "any person" language as the rest of the Act. Thus, the Act implicates not just civil recovery, but civil liability as well.

Section 35 of the Act authorizes the Attorney General or the State's Attorney to "bring an action *** against *any person* to restrain and prevent any pattern or practice violation of this Act." (Emphasis added.) 815 ILCS 513/35(a) (West 2006). Because section 35 contains no exception to the "any person" language, noncompliance with the Act not only prevents the ability to recover, but also exposes the entity to civil liability. Thus, the Act cannot reasonably be construed, as defendants contend, to apply to a subcontractor only when the subcontractor wishes to bring a direct action against the homeowner. The Act must apply to subcontractors in its entirety, or not at all.

Our conclusion that the Act does not include subcontractors is also consistent with related statutes. A subcontractor's recovery against a homeowner is usually governed by the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2006)). In fact, the consumer rights brochure provided for in the Home Repair and Remodeling Act implicitly references the application of the Mechanics Lien Act. The brochure states, "Suppliers and subcontractors have a right to file a lien against your property if the general contractor fails to pay them. To protect your property, request lien waivers from the general contractor." 815 ILCS 513/20(c) (West 2006).

The Mechanics Lien Act is designed to provide, among other things, a remedy for wronged subcontractors. If the Home Repair and Remodeling Act applies to subcontractors, portions of the Mechanics Lien Act are rendered superfluous. For instance, section 5 of the Mechanics Lien Act prescribes a notice that each subcontractor must provide to a homeowner in order to preserve its lien claim:

> "Each subcontractor who has furnished, or is furnishing, labor, services, material, fixtures, apparatus or machinery, forms or form work in order to preserve his lien, shall notify the occupant either personally or by certified mail, return receipt requested, addressed to the occupant or his agent at the residence within 60 days from his first furnishing labor,

services, material, fixtures, apparatus or machinery, forms or form work, of his agreement to do so.

The notice shall contain the name and address of the subcontractor or material man, the date he started to work or to deliver materials, the type of work done and to be done or the type of labor, services, material, fixtures, apparatus or machinery, forms or form work delivered and to be delivered ***." 770 ILCS 60/5(b)(ii) (West 2006).

If the Home Repair and Remodeling Act required each subcontractor, before work began, to "furnish to the customer for signature a written contract or work order that states the total cost, including parts and materials listed with reasonable particularity and any charge for an estimate" (815 ILCS 513/15 (West 2006)), it would render the notice provided in section 5(b) of the Mechanics Lien Act unnecessary and redundant.

The Mechanics Lien Act also requires a subcontractor to give a specific warning to a homeowner when it provides the notice of rendering services. This warning reads:

"The subcontractor providing this notice has performed work for or delivered material to your home improvement contractor. These services or materials are being used in the improvements to your residence and entitle the subcontractor to file a lien against your residence if the services or materials are not paid for by your home improvement contractor. A lien waiver will be provided to your contractor when the subcontractor is paid, and you are urged to request this waiver from your contractor when paying for your home improvements." 770 ILCS 60/21 (West 2006).

By comparison, the brochure required under the Home Repair and Remodeling Act requires the statement, "homeowners should know who provides supplies and labor for any work performed on your home. Suppliers and subcontractors have a right to file a lien against your property if the general contractor fails to pay them. To protect your property, request lien waivers from the general contractor." 815 ILCS 513/20(c) (West 2006).

If each subcontractor is required to contract with the homeowner directly, there would be no need for these provisions in the Mechanics

Lien Act. All the information required in both the Mechanics Lien Act notice and warning would already have been given as required under sections 15 and 20 of the Home Repair and Remodeling Act.

Forcing subcontractors to comply with the Act would increase the burden on the very homeowners the Act is meant to protect. Such a homeowner would have to read and examine each contract, ensure that the totals in the subcontracts do not exceed the amount allocated to that portion of the project under both the contract with the general contractor and the contract that the general contractor has with the subcontractor. The homeowner would have to ensure the same project deadlines are present. The homeowner may even have to ensure that the deadlines in one contract are sufficiently early to allow other subcontractors to complete their tasks before the total project deadline. The simplicity of providing the homeowner with one written contract enumerating all the costs would be obfuscated under such a reading. Even under the best of circumstances, all a requirement of subcontractor compliance would yield is repetition of the same information already conveyed by the general contractor.

The statute is focused on regulating the communications and business practices of those people who directly solicit and contract with the homeowner.

The statute's plain language limits its application to only those who contract directly with the homeowner. To allow any other interpretation not only would be contrary to our principles of statutory interpretation, but would also do severe damage to industry practice and other statutes. The Home Repair and Remodeling Act is unambiguous and only applies to those who form direct contracts with the homeowner.


II

Defendants' petition for leave to appeal raised only the issue of the application of the Home Repair and Remodeling Act to subcontractors. However, in defendants' brief to this court, they raise the question of plaintiff's ability to recover under *quantum meruit* where there was no direct contractual relationship between the defendants and plaintiff. In reality, this question is far broader than the application of *quantum meruit* to the present action. Indeed, the

argument is that a subcontractor has no direct right of recovery outside of the Mechanics Lien Act. This question was not properly presented in the defendants' petition for leave to appeal (PLA). Accordingly, plaintiff argues that the issue is forfeited. For the reasons that follow, we agree.

Defendants argue that this question is not forfeited because it was "(i) directly and properly raised before the Appellate Court, (ii) directly raised in the initial brief filed in this cause, and (iii) [plaintiff] has had ample opportunity to respond to the argument." This statement is incorrect on all three counts.

The defendants' contention that the issue was properly raised before the appellate court is a "red herring." As this court stated in *Marshall v. Burger King Corp.*, "[i]t is well settled that where the appellate court reverses the judgment of the circuit court, and the appellee in that court brings the case before this court as an appellant, that party may raise any issues properly presented by the record to sustain the judgment of the circuit court." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430-31 (2006) (noting that the sole issue before the trial court was whether defendant owed a duty of care to decedent; thus, when defendant raised the issue of proximate cause before this court, this court found the issue was not properly presented by the record and thus ineligible for review). In the present case, defendants prevailed in the circuit court. They were the appellee in the appellate court, where plaintiff prevailed, and are the appellants in the present action. Therefore, the relevant inquiry is not, as defendants contend, whether the issue was "directly and properly raised before the appellate court," but rather whether the issue is properly raised by the trial court record and can now be utilized to support the finding of the trial court.

At the outset, we note that the issue before this court is a different issue than was addressed by the circuit court. Defendants, in their motion to dismiss plaintiff's first amended complaint, argued that the trial court could not allow plaintiff's action to go forward because to do so would be in derogation of a statute which prohibited the enforcement of this agreement. To support this argument, defendants cited *TLC The Laser Center, Inc. v. Midwest Eye Institute II, Ltd.*, 306 Ill. App. 3d 411 (1999), and *Leoris v. Dicks*, 150 Ill. App. 3d 350 (1986). In *TLC*, the appellate court held that a fee-splitting

arrangement could not be enforced because it ran afoul of the Medical Practice Act. *TLC*, 306 Ill. App. 3d at 429. In *Leoris*, the appellate court refused to allow attorneys to split fees where public policy prohibited the practice. In doing so, the appellate court noted that, "[w]here enforcement of an illegal contract is sought, the courts will aid neither party but will leave them where they have placed themselves since the parties are *pari delicto* and can recover nothing under the contract." *Leoris*, 150 Ill. App. 3d at 354.

In the present case, the trial court, in granting the motion to dismiss asked plaintiff's counsel, "[H]ow can the court imply a contract where the law prohibits one?" Thus, the question before the trial court was not the availability of the *quantum meruit* theory of recovery itself, but whether the court's enforcement of an implied contract would be lawful where the Home Repair and Remodeling Act (if it applied to subcontractors) would prohibit the contract from existing in the first place.

Before this court, the issue presented by defendants is decidedly different. Defendants present the issue by stating that a "subcontractor has no claim against a homeowner in *quantum meruit* under long-settled Illinois law." Thus, the issue changes from one that was intertwined with the application of the Home Repair and Remodeling Act to a question that is an independent basis for dismissal of the case. It is also worth noting that the first time the cases of *Redd v. Woodford County Swine Breeders, Inc.*, 54 Ill. App. 3d 562 (1977), *Vanderlaan v. Berry Construction Co.*, 119 Ill. App. 2d 142 (1970), and *Suddarth v. Rosen*, 81 Ill. App. 2d 136 (1967), appear as cited authority is in defendants' brief to this court. Defendants make no mention of these cases in their motion to dismiss. The appearance of these cases in defendants' brief to this court invites the court to adopt a *per se* prohibition on a subcontractor recovering against a homeowner outside of the Mechanics Lien Act, where there was no privity of contract. This is a different issue altogether than was presented to the trial court. Thus, the *quantum meruit* issue presented to this court is not properly presented by the record in this case and is therefore forfeited.

Further, Supreme Court Rule 315(c)(3) requires that petitions for leave to appeal contain a "statement of the points relied upon for reversal of the judgment of the Appellate Court." 210 Ill. 2d R.

315(c)(3). If a party fails to raise an issue in its petition for leave to appeal, it may be deemed a forfeiture of that issue. *Central Illinois Light Co. v. Home Insurance Co.* 213 Ill. 2d 141, 152 (2004).

Contrary to defendants' assertions, the issue was not directly raised in the PLA. The first time the *quantum meruit* issue is even mentioned in the PLA is in footnote 2 on page 12 of the PLA, where the defendants note that the appellate court declined to address the "related issue" of whether a subcontractor can recover from a homeowner with whom there is no direct contractual relationship. The issue is alluded to a second time in the last paragraph of the conclusion, where the defendants state that the plaintiff has no right to proceed directly against the defendants "under any theory except a properly perfected mechanic's lien." These passing references do not constitute a statement sufficient to meet the requirements of Rule 315.

Finally, there is no legal support to claim that a court should reach an issue simply because plaintiff has had an "ample opportunity to respond." Beyond the defendants' implication that plaintiff had "ample opportunity to respond," plaintiff's only response to this argument was to assert that the issue was forfeited. This case is illustrative of why the court must have forfeiture rules. By raising the question at this juncture, this court is effectively deprived of the benefit of having the issue squarely addressed by the parties. Therefore, this issue is forfeited for the purpose of the present appeal before this court.

## CONCLUSION

For the reasons stated, the Home Repair and Remodeling Act does not apply to subcontractors. We affirm the judgment of the appellate court, which remanded this cause to the trial court for further consideration.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

The court's decision today rests on the assumption that the Home Repair and Remodeling Act is an affirmative defense to the cause of action asserted in this case. The court's opinion, however, never addresses if this assumption is correct. The court's analysis is therefore incomplete. Additionally, the court's decision rests upon its discussion of the relationship of a "subcontractor" to a "general contractor." This is problematic for a number of reasons, not the least of which is the fact that the court's understanding of that relationship comes from "facts" not found in the record. In fact, operation of the Home Repair and Remodeling Act in this case has nothing to do with notions regarding the relationship between general and subcontractors at all–*the Act does not even use the terms*, a fact all but ignored by the court. Instead, the Act concerns only the nature of work done and whether the work has been done pursuant to the Act's requirements concerning accuracy of communications about that work to the consumer. Facts about these things are entirely underdeveloped in this record, a fault of plaintiff's complaint to be sure, but a fault that the court condones. In utterly failing to allege any specifics about the contract in this case and the work undertaken, the complaint hardly offers a proper foundation for this court's first opportunity to address the Home Repair and Remodeling Act.

The court is not bothered by any of this, or the niceties of proper procedure for that matter. The result is an opinion of near-advisory nature and a confusing one at that. Readers of the court's opinion may try, as I have, to determine exactly what the court's ruling *is*. As far as I can perceive, it is this: the Home Repair and Remodeling Act applies only to entities that contract directly with consumers and, to the extent that plaintiff claims that it was not such an entity, the Act does not apply to it. This perhaps would be an acceptable ruling, if there were any basis in the record for it. The record, however is far too underdeveloped to allow for that conclusion, and I therefore respectfully dissent.


Procedural Background & Controlling Principles

The first indication that the court's opinion is off-track appears early on in its "Background" section. In a footnote, the court explains that because neither party has "claimed that plaintiff was anything other than a subcontractor," it need not address the fact that the record

reflects that plaintiff may have "ceased to act as a subcontractor." Slip op. at 3 n.1. The court asserts that this discrepancy has no bearing on its analysis because such a dispute is a "factual question and beyond the scope of this opinion." Slip op. at 3 n.1.

I am not entirely sure what the court means by "beyond the scope of this opinion." This case is before us on the dismissal of plaintiff's complaint pursuant to section 2–619 of the Code of Civil Procedure (735 ILCS 5/2–619 (West 2004)). Generally, the existence of such a disputed question of fact is enough, in and of itself, to preclude dismissal under section 2–619, as was explained in *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Based on statements made in the parties' affidavits, I disagree that "neither party has claimed that plaintiff was anything other than a subcontractor." The parties are in dispute about plaintiff's status. In my opinion, the existence of a disputed factual question is not "beyond the scope" of an opinion that supposedly addresses whether the circuit court correctly dismissed the cause of action under section 2–619.

It could be said that all of the problems in today's opinion stem from the court's inability to properly frame the central issue before it. As I have noted, the question raised in this appeal is whether the circuit court properly dismissed plaintiff's complaint. The court, however, sees the issue differently, stating that, in this appeal, it is asked "to decide whether and to what extent the *** Act applies to subcontractors." Slip op. at 5. The court's failure to accurately recognize the issue leads it to assert that the standard of review in this case is *de novo* because the case is "one of statutory interpretation." Slip op. at 4. This, of course, is wrong. Although the circuit court's decision to dismiss raised an ancillary question concerning the interpretation of a statute (a legal question to which rulings made by the circuit court are given no deference on appeal), the standard of review in all appeals, including this one, is governed by the circuit court's ultimate disposition, nothing else. In this case, that disposition was the dismissal of plaintiff's complaint pursuant to section 2–619. An appeal from such a ruling is the "same in nature" as an appeal following the grant of summary judgment and is "likewise a matter given to *de novo* review." *Kedzie*, 156 Ill. 2d at 116. The reviewing court must consider whether the existence of a genuine issue of

material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Kedzie*, 156 Ill. 2d at 116-17. See also 4 R. Michael, Illinois Practice §41.9 (1989).

Defendant's motion to dismiss was presumably brought pursuant to subsection (a)(9) of section 2–619. I say "presumably" because the motion does not specify the subsection under which it was brought, a fact that does not appear to bother the court much.[2] Subsection (a)(9) is appropriate where the basis asserted for dismissal relies on "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2–619(a)(9) (West 2004). The important point is that a section 2–619(a)(9) motion "admits the legal sufficiency of the plaintiff's cause of action much in the same way that a section 2–615 motion to dismiss admits a complaint's well-pleaded facts." *Kedzie*, 156 Ill. 2d at 115. However, such motions do not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. *Meyer v. Murray*, 70 Ill. App. 3d 106 (1979).

What, then, did plaintiff allege in its complaint? The complaint alleged in conclusory fashion that, over the course of a five-month period in 2004, plaintiff "furnished sub-contractor services, which consisted of providing electrical materials, equipment, labor and services" at defendants' residence. The complaint, all of a page and a half, alleged that "no contract existed between plaintiff and defendants to govern the method by which plaintiff would be compensated for its services." Plaintiff sought the reasonable value of its services. The complaint otherwise failed to specifically allege what "subcontractor services" were actually performed or even the scope of its subcontract in relation to the rest of the general contract.

All of the other facts in this case come by way of affidavits submitted for consideration upon the motion to dismiss. The

---

[2]I find it ironic that the court gives the parties a pass on the shoddy pretrial practice that took place in the circuit court, but then seizes, in its typical arbitrary fashion (see, *e.g.*, *People v. McCarty*, 223 Ill. 2d 109 (2006) (reaching argument despite defendant's failure to comply with Rule 315)), on defendants' failure to follow Rule 315.

affidavits defendants attached to their motion stated that they did not enter into any written contract with plaintiff and did not receive any pamphlet required by the Home Repair and Remodeling Act. The affidavit of Michael J. O'Brien, which was attached to plaintiff's response, stated that plaintiff contracted with Apex Builders, Inc., the general contractor, "for electrical material and services to be installed and/or performed" at defendant's residence. O'Brien's affidavit stated that Apex had a "contractual relationship" with defendants. The affidavit stated further that, "during an initial walk-through," defendants "approved the preliminary plans and authorized said work to begin." Plaintiff "performed services including but not limited to installation of conduit, brackets, electrical boxes, recessed lighting and bathroom fans."

That affidavit also stated, however, that other work, outside of Apex's contract, was performed by plaintiff. O'Brien's affidavit stated that "during the same initial walk-through, [defendants] requested that [plaintiff] provide *additional material and services not included in the original plan* including but not limited to under-cabinet lighting; television and data wiring; and full electrical services to an additional family room and an additional bathroom." (Emphasis added.)

Importantly, O'Brien's affidavit says nothing about the central concern for this case: whether the recovery sought by plaintiff represented costs for work "not included in the original plan" as opposed to costs for work that plaintiff performed under Apex's contract with the defendants.

Finally, defendants supported their reply with affidavits which stated that neither Apex nor plaintiff provided them "with a written agreement or change order for additional work claimed by plaintiff, namely under-cabinet lighting, television and data wiring, and full electrical services to an additional family room and an additional bathroom." Defendants also stated that they were never "provided with an updated estimate of the cost for any such 'additional work.' "

What are the consequences of these alleged facts? A section 2–619 motion is designed to test, like a motion for summary judgment, if a material or genuine disputed question of fact is raised. If so, the circuit court may decide the motion

-19-

"upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer and shall so deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time." 735 ILCS 5/2–619(c) (West 2004).

See also *Castro v. Chicago, Rock Island & Pacific R.R. Co.*, 83 Ill. 2d 358 (1980). Therefore, section 2–619, unlike a motion for summary judgment, allows the trial judge the discretion to litigate disputed questions of fact if a jury demand has not been made. In exercising this discretion, the judge may hear and determine the merits of the dispute based on the pleadings, affidavits, counteraffidavits, and other evidence presented, but may not weigh conflicting affidavits. *In re Estate of Silverman*, 257 Ill. App. 3d 162 (1993). When presented with conflicting affidavits, the judge must hold "an evidentiary hearing" at which "the unresolved issue or issues of fact must be determined on the basis of a preponderance of the evidence." 4 R. Michael, Illinois Practice §41.8, at 336 (1989), citing *Chapman v. Huttenlocher*, 125 Ill. App. 2d 39 (1970); *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 331-32 (1995) (Freeman, J., specially concurring) (noting the shifting burdens in section 2–619 practice).


Application of the Law

Whether the circuit court correctly dismissed plaintiff's complaint turns upon whether the Act has any application to this case in light of the facts actually alleged, and not on generalizations about the relationship between subcontractors and contractors. As an initial matter, I note that both this court and the appellate court have accepted the underlying premise of defendants' section 2–619 motion–that the Act serves as an affirmative defense to plaintiff's cause of action. As a result, neither court has engaged in any analysis on the question of whether the legislature intended, by virtue of the Act's passage, to abolish the common law remedy of *quantum meruit* or even to provide individual consumers like defendants with a private right of action to enforce violations of the Act. Certainly, the plain language of the Act is silent as to both of these related issues. The Act's stated purpose is to "increase consumer confidence, reduce the likelihood of disputes, and promote fair *** practices" between

-20-

consumers and those "engaged in the business of making home repairs or remodeling" by way of "improved communications" and "accurate representations." 815 ILCS 513/5 (West 2004); see also *Smith v. Bogard*, 377 Ill. App. 3d 842 (2007). To that end, the Act requires that prior to initiating home repairs or remodeling work for over $1,000, a written contract must be presented to the customer. 815 ILCS 513/15 (West 2004). A written pamphlet that explains consumers' rights must also be presented to the customer by the home repairer or remodeler. 815 ILCS 513/20 (West 2004). As I noted at the outset of this separate opinion, the Act does not speak in terms of subcontractors and contractors. Rather, the Act makes it unlawful for those who engage in home repair and remodeling to "remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000." 815 ILCS 513/30 (West 2004).[3] The Act does not contain language that explicitly provides that violations of the Act may be enforced by consumers in a private cause of action. Rather, section 35 states that the Attorney General or the State's Attorney "may bring an action in the name of the people of this State against any person to restrain and prevent any pattern or practice violation of this Act." 815 ILCS 513/35 (West 2004). In enforcing the Act, both the Attorney General or the State's Attorney

> "may accept an assurance of voluntary compliance from anyone engaged in any conduct, act, or practice deemed in violation of this Act. Failure to perform the terms of any such assurance constitutes prima facie evidence of a violation of this Act." 815 ILCS 513/35 (West 2004).

Section 35(b) also states that "[a]ll remedies, penalties, and authority granted" to the Attorney General or the State's Attorney "by the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1 *et seq*.] shall be available to him or her for enforcement of this Act ***." 815 ILCS 5/35 (West 2004). Moreover, "any violation of this Act shall constitute a violation of the Consumer Fraud and

---

[3]I note that section 30 makes only the failure to obtain the signed written contract required in section 15 "unlawful." 815 ILCS 5/30 (West 2004). Section 30 does not contain a similar provision with respect to the consumer rights brochure required in section 20.

Deceptive Business Practices Act." 815 ILCS 513/35 (West 2004). Given the plain language of the statute, I believe analysis on the question of whether the Act is, in fact, an affirmative defense as defendants assert is warranted. This is particularly so in this case which marks this court's first opportunity to interpret this recently enacted legislation.

Rather than provide that analysis, the court chooses to confine the focus of this case to the issue of whether the terms of the Act apply to subcontractors such as plaintiff. In this regard, the court again accepts, without question, the assertions of the litigant–this time plaintiff's assertion that it is a subcontractor. The court's analysis proceeds then on the assumption that plaintiff is a subcontractor even though an examination of the record shows that plaintiff's subcontractor status is far from clear. The pleadings and affidavits show that the dispute between the parties lies in whether the work identified in plaintiff's complaint was part of the project that was the subject of defendants' original remodeling contract with Apex. In other words, was the work performed by plaintiff for defendants specified in a written contract signed by them in accordance with section 30 of the Act? If the services identified in plaintiff's complaint were performed pursuant to a written general contract that was signed by the homeowner, section 30 of the Act has no application to this case because the work was performed pursuant to the requisite written contract. However, if the services identified in the complaint were not part of the written general contract signed by the homeowner, as both plaintiff's and defendants' affidavits suggest, then it would appear that plaintiff has run afoul of the Act in that it "remodel[ed] or ma[d]e repairs or charge[d] for remodeling or repair work before obtaining a signed contract or work order over $1,000." 815 ILCS 513/30 (West 2004).

None of these concerns, however, can be answered from the record in front of us. What the case needs for proper disposition is development of evidence, as the complaint failed to allege the relevant facts and the affidavits merely hinted at them. The relevant questions are: What was the scope of the work defined in the contract between defendants and Apex? What portion of that work did plaintiff agree with Apex to perform? What was the extent of the additional work ordered by defendants and agreed to by plaintiff?

-22-

Was there a written contract signed by the homeowner with respect to this additional work? Without answers to these factual questions, it is impossible to discern the Act's applicability in this case.

Given the existence of these factual questions, the circuit court's dismissal of plaintiff's complaint was, at best, premature and, at worst, incorrect. The record before us does not indicate that plaintiff filed a jury demand at the commencement of the proceedings as required by section 2–1105 of the Code of Civil Procedure. See 735 ILCS 5/2–1105 (West 2004) (requiring that a plaintiff "desirous" of a jury "file a demand" with the clerk "at the time the action is commenced"). There being no jury demand having been made by the opponent of the motion, I would therefore vacate the circuit court's order of dismissal and remand the cause with instructions that the circuit court litigate these disputed questions in an evidentiary hearing.[4] If the work performed by plaintiff for defendants was, indeed, covered by the written general contract signed by the homeowner, then the Act has no application to this case because a written contract was in existence, as the Act requires, and the motion should be denied. If the additional work was not subject to a written contract, then the Act is implicated.[5]

---

[4]The court's opinion provides little guidance to either the parties or the trial judge with respect to the remand. Based on the conclusory allegations in the complaint and the few additional facts offered in the affidavits, the record here is simply too thin for the court to say with certainty that the circuit court's dismissal was wrong. That is why I would remand for further proceedings on the section 2–619 motion. The court's opinion reverses the dismissal order but what happens next? In light of the inattention to procedural detail shown by the parties thus far, I find the court's failure to provide specific directions to be particularly problematic.

[5]I express no opinion as to (i) whether the Act provides consumers with a private right of action to enforce violations of the Act in this manner and (ii) whether, in enacting the Act, the legislature intended to abolish the common law remedy of *quantum meruit*. I submit that these are *the* important questions under the Act. See *K.A.L.M. Construction, Inc. v. Stiefbold*, No. 2–07–1131 (December 4, 2007)

Rather than construe the actual terms of the Act and apply them to the facts–such as they are–the court's analysis is dependent on its discussion about contractors and subcontractors. Worse yet, the court relies on its own notions regarding these terms. Indeed, after setting forth the standard of review–which the court gets right, but for the wrong reason–it prefaces its analysis by noting that "the use of general contractors and subcontractors is a common business practice in the home repair and remodeling industry." Slip op. at 4. Further musings on industry practice ensue. Slip op. at 4-5. From where does this information come? Were it even relevant, none of this is alleged in the complaint or supplied by other, appropriate evidence related to the motion. The discussion is not appropriate by way of judicial notice notwithstanding that the term "subcontractor" is given to various meanings. See 770 ILCS 60/21 (West 2004) (defining subcontractor under the Mechanic's Lien Act as "every mechanic, worker *** who shall furnish any materials *** or perform services or labor for the contractor"); *Baker & Conrad, Inc. v. Chicago Heights Construction Co.*, 364 Ill. 386, 394-96 (1936) (defining "subcontractor" under Worker's Compensation Act as those "contracting directly with the original contractor" as well as those "who have contracted with one whose contract is subordinate to a previous agreement, regardless of whether it is the original or general contract" and noting that "subcontractor" has a less restrictive meaning under the Worker's Compensation Act than under the Mechanic's Lien Act). Given that the Act does not even speak in terms of contractors and subcontractors, it is both unnecessary and unwise for the court to engage in this discussion.

Unfortunately, the court's discussion leads to an analysis based on little more than conjecture. Specifically, the court states that "[s]ubcontractors do not directly contract with a homeowner/customer" so the Act cannot apply to them. Slip op. at 8. However, even the paltry facts before us suggest that such a

_____

(unpublished order under Supreme Court Rule 23), *pet. for leave to appeal denied*, No. 105847 (March 26, 2008). I might also point out that the circuit court here, in trying to help the parties to properly frame the issue, repeatedly raised the issue of *quantum meruit*.

-24-

generalization is not always true. Here, plaintiff, Apex's subcontractor, may have directly contracted with the homeowner/customer about additional work that was not a part of the original contract. The court further states that "[s]ubcontractors, by virtue of their working for a general contractor, do not make 'representations' to a homeowner" Slip op. at 8. Again, this generalization is not always true, as the record before us suggests. Plaintiff may have made "representations" to the homeowner even though it was "working for a general contractor." Because the court's discussion is not founded in either fact or law, the result is an interpretation of the Act that is oftentimes difficult to understand and even more difficult to apply. By directly contracting with the homeowner and making direct representations to the homeowner, plaintiff, described throughout the court's opinion as a "subcontractor," would seem to fall within the class of home repairers and remodelers that the legislature sought to regulate in the Act.

The court's treatment of this case is unfortunate because the Act is a relatively new piece of legislation that has been the subject of few published decisions. In fact, in addition to the appellate court's opinion in this case, only two other decisions have addressed questions of the Act's interpretation. See *Smith v. Bogard*, 377 Ill. App. 3d 842 (2007); *Central Illinois Electrical Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545 (2005). A thorough, fact-based opinion from this court would have been helpful to those who work in the home repair and remodeling industry as well as to the consumers the Act intended to protect.

JUSTICE BURKE joins in this dissent.