2019 IL App (4th) 180770

NO. 4-18-0770

FILED
October 9, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| GAYLE NAFZIGER, | ) | Appeal from |
|     Petitioner-Appellee, | ) | Circuit Court of |
|     v. | ) | Macoupin County |
| THE BOARD OF EDUCATION OF STAUNTON | ) | No. 16MR69 |
| COMMUNITY UNIT SCHOOL DISTRICT NO. 6 OF | ) | |
| MACOUPIN AND MADISON COUNTIES, | ) | Honorable |
|     Respondent-Appellant. | ) | Kenneth R. Deihl, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justices Cavanagh and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        Respondent, the Board of Education of Staunton Community Unit School District

No. 6 of Macoupin and Madison Counties, employed petitioner, Gayle Nafziger, as a

schoolteacher for 32 years. After the 2015-16 school year, due to a reduction in force (RIF),

respondent honorably dismissed petitioner.

¶ 2        Petitioner then filed a civil complaint for declaratory judgment, alleging, based on

her summative evaluation performance ratings from the 2014-15 school term, respondent

improperly placed her in grouping two on the sequence of honorable dismissal list, which

resulted in her honorable dismissal. Following a bench trial, the circuit court entered declaratory

judgment in favor of petitioner. The circuit court stated it based its decision on the application of

section 24-12(b)(2) of the School Code (Code) (105 ILCS 5/24-12(b)(2) (West 2014)) and "the ratings received in each evaluation of proficient."

¶ 3        On appeal, respondent argues (1) the circuit court erred in its interpretation of section 24-12(b) of the Code (*id.* § 24-12(b)) and (2) the circuit court's decision was against the manifest weight of the evidence. For the following reasons, we reverse.

¶ 4                                I. BACKGROUND

¶ 5                                A. Procedural History

¶ 6        In July 2016, petitioner filed a civil complaint for declaratory judgment, alleging, based on her summative evaluation performance ratings from the 2014-15 school term, respondent improperly placed her in grouping two on the sequence of honorable dismissal list for a RIF, resulting in her honorable dismissal. Petitioner argued that under section 24-12(b) of the Code (*id.*), respondent should have placed her in grouping three on the sequence of honorable dismissal list thereby saving her from dismissal.

¶ 7        The matter proceeded to a bench trial held over two consecutive days in December 2017. Prior to trial, the parties entered a stipulation stating, "The parties hereby stipulate that *if* GAYLE NAFZIGER should have properly been placed in Group 3 as a result of a proficient evaluation, then based on her certifications and years of seniority, she would not have been subject to Honorable Dismissal by Reduction in Force." (Emphasis in original.) Below, we summarize the evidence presented at trial.

¶ 8                                B. Petitioner's Bench Trial

¶ 9                                1. *New Evaluation System*

¶ 10       In 2010, the Governor signed into law Public Act 96-861, titled the "Performance Evaluation Reform Act of 2010" (commonly known as PERA), implementing a new teacher

evaluation system in Illinois. See Pub. Act 96-861 (eff. Jan. 15, 2010) (amending 105 ILCS 5/24A-5). Under PERA, administrators formally and informally observe teachers and award a summative performance evaluation rating based on four ratings, a change from three ratings. 105 ILCS 5/24A-5 (West 2010). The four ratings include, "excellent," "proficient," "needs improvement," and "unsatisfactory." *Id.* § 24A-5(e).

¶ 11 Respondent school district evaluates and awards tenured teachers a summative performance evaluation rating once every two years unless they receive a "needs improvement" or "unsatisfactory" rating, in which case respondent school district evaluates a teacher the following year. See 105 ILCS 5/24A-5 (West 2014). Respondent school district implemented PERA in September 2012.

¶ 12 2. *Petitioner's Honorable Dismissal*

¶ 13 Petitioner, a schoolteacher in contractual continued service (tenure) with respondent school district, taught for 32 years before her honorable dismissal. During the 2011-12 school term—school term being July 1 to the following June 30—petitioner's principal, Mark Skerticher, awarded her a summative performance evaluation rating of "excellent" under the old evaluation system. During the 2012-13 school term, respondent school district conducted no evaluation of petitioner due to her status as tenured and her rating of "excellent" the prior year. During the 2013-14 school term, a new principal, Brooke Wiemers, observed petitioner based on PERA and awarded petitioner a summative performance evaluation rating of "needs improvement."

¶ 14 After receiving a "needs improvement" summative performance evaluation rating, Wiemers placed petitioner on a professional development plan as required by the Code. See *id.* § 24A-5(h). The professional development plan stated:

"The teacher will be evaluated during the 2014-2015 school year as required by the Code. The District expects that more than the minimum number of evaluations will be conducted on both an announced and unannounced basis. The [a]dministrators may conduct observations, have input into evaluations[,] and may assist in improvement tasks. The administrators will observe lessons being taught, review lesson plans when specified, conduct conferences as needed[,] and assist with teaching ideas.

[Petitioner] must be rated as proficient to be reinstated to the regular tenured teacher evaluation cycle."

Petitioner testified that during the professional development plan she frequently met with administrators. Petitioner testified she completed the plan at the end of the 2013-14 school term. Wiemers never formally evaluated petitioner at the conclusion of the plan.

¶ 15        Petitioner and Wiemers testified that during the 2014-15 school term, Wiemers formally observed petitioner's classroom on November 5, 2014, and November 19, 2014. A summative rating form labeled petitioner's exhibit No. 3 and dated November 26, 2014, provided petitioner with an overall summative performance evaluation rating of "proficient." A summative rating calculation form labeled petitioner's exhibit No. 4 and dated February 21 and 23, 2015, also contained a summative performance evaluation rating of "proficient."

¶ 16        Wiemers testified that petitioner's exhibit No. 3 reflected the summative performance evaluation rating from the formal observations completed in November 2014. According to Wiemers, petitioner's exhibit No. 4—the summative rating calculation form— transferred those formal observation scores from petitioner's exhibit No. 3 onto a form that

summarized or provided the superintendent's office with a simple score sheet to complete petitioner's final summative performance evaluation rating for the 2014-15 school year. Wiemers sent a summative rating calculation form to the superintendent's office for every teacher evaluated during that school year. Wiemers testified petitioner's exhibit No. 3 and petitioner's exhibit No. 4 together created one summative performance evaluation rating of "proficient" for petitioner for the 2014-15 school term.

¶ 17    Petitioner testified that during the 2014-15 school term, she received two "proficient" summative performance evaluation ratings. Petitioner however acknowledged that all of the domain ratings in petitioner's exhibit No. 3 and petitioner's exhibit No. 4 matched. Petitioner failed to allege whether any additional formal or informal observations took place between November 2014 and February 2015.

¶ 18    Superintendent Dan Cox testified that respondent school district uses formal and informal observations to help determine a summative performance evaluation rating. Formal observations include prior notification as well as a pre-observation and post-observation conference. Informal observations are unannounced, and if respondent school district plans to use an informal observation to formulate the final summative performance evaluation rating, the teacher must receive certain documentation.

¶ 19    Cox testified that the two November 2014 dates printed on petitioner's exhibit No. 3 were two formal observation dates and that "[t]here's only one evaluation per year." Cox testified, "It's not uncommon for principals to interchangeably use the terminology evaluation and observation. Per the statute, you do two, one to two formal—observations per year that's used to make a summative [performance evaluation] rating."

¶ 20        Cox prepared the sequence of honorable dismissal list for the 2015-16 school term. "The Sequence of Honorable Dismissal List required placement of teachers first by positions they are eligible to teach or qualified to teach and then by statutorily defined groupings and years of service. This determines the order of dismissal if a [RIF] happened or occurred." See *id*. § 24-12(b) (West 2014). Specifically, teachers are categorized by position and grouped into four performance categories based upon their last two summative performance evaluation ratings. *Id.* Every year, the superintendent prepares and sends a copy of the sequence of honorable dismissal list to the teacher's union by February—75 days before the end of the school year.

¶ 21        Cox categorized petitioner as qualified for a "special education resource secondary" position and placed petitioner in grouping two based on her two prior summative performance evaluation ratings of "needs improvement" and "proficient." Teachers placed in grouping two have a "needs improvement" or "unsatisfactory" on one of their previous two summative performance evaluations. The sequence of honorable dismissal list also included the number 2.5 next to petitioner's name where 2.5 represented the average of petitioner's last two summative performance evaluation ratings and is used as a tie-breaker within grouping two. Order of dismissal is determined in reverse order, starting with grouping one.

¶ 22        Also during the 2015-16 school term, Cox prepared Senate Bill 7 performance rating group forms for teachers.  Senate Bill 7 omitted tenure and seniority as the primary means used to determine a RIF and, instead, incorporated teaching performance and student growth. Pub. Act 97-8 (eff. June 13, 2011) (amending 105 ILCS 5/24-12(b)).  Every teacher in the district received a Senate Bill 7 performance rating group form to verify its accuracy. Petitioner's exhibit No. 5 and defendant's exhibit No. 18 represent the Senate Bill 7 performance rating

group forms for petitioner. Petitioner indicated all of the information in petitioner's exhibit No. 5 was correct but corrected defendant's exhibit No. 18 to add reading specialist as an additional licensure and endorsement she possessed. Petitioner signed both exhibits. Both exhibits show a "proficient" performance evaluation rating from February 2015 as the most recent summative performance evaluation rating and the next preceding summative performance evaluation rating as "needs improvement" from February 2014. Due to petitioner's "proficient" summative performance evaluation rating during the 2014-15 school term, respondent school district conducted no summative evaluation of petitioner during the 2015-16 school term.

¶ 23　　　　Cox recommended that respondent RIF three teaching positions at the conclusion of the 2015-16 school term, one position being a special education position. To determine which teachers to dismiss, Cox referenced the sequence of honorable dismissal list and examined the positions and groupings to determine who must be included on the resolution authorizing honorable dismissal. Petitioner's placement in grouping two on the sequence of honorable dismissal list and her position as a special education teacher resulted in her inclusion on the resolution for honorable dismissal. Due to her placement in grouping two, no other teachers in petitioner's special education position qualified for honorable dismissal before petitioner.

¶ 24　　　　On March 21, 2016, respondent adopted a resolution authorizing honorable dismissal of three teachers. Respondent honorably dismissed petitioner pursuant to the resolution. On March 23, 2016, petitioner received a notice and statement of honorable dismissal. Cox testified he sent the notice to petitioner by first class mail, certified mail return receipt requested, and by personal delivery with receipt. The statutory notice requirement of the Code required notice be delivered to petitioner 45 days before the last day of attendance for the 2015-16 school term. *Id.* § 24-12(b) (West 2014).

¶ 25   Board members testified and the parties stipulated that respondent relied upon the recommendation of Cox in determining, in the event of a RIF, which positions and teachers to honorably dismiss. The collective bargaining agreement in effect during the 2015-16 school term contained no provisions related to a RIF. The Joint Committee for RIF and Recall—a committee required by section 24-12(c) of the Code (*id.* § 24-12(c)) to meet regarding RIF—adhered to the Code and never created an agreement to modify the definition of a grouping two teacher to a grouping three teacher.

¶ 26                                    C. Circuit Court's Decision

¶ 27   In October 2018, the circuit court entered declaratory judgment in favor of petitioner. The court stated its reasoning as follows.

"2. The evidence establishes that during the school year 2014-2015 the Petitioner, GAYLE NAFZIGER at that time a certified teacher employed by the Respondent, STAUNTON COMMUNITY UNIT SCHOOL DISTRICT NO. 6 OF MACOUPIN COUNTY, was evaluated for teaching performances on two occasion[s] and said evaluations were admitted into evidence as Petitioner's Exhibits 3 and 4.

3. Based upon the two evaluations that were conducted of the Petitioner by a[n] evaluator for the Respondent and based upon the rating received in each evaluation of proficient and based upon the application of Section 24-(b)(2)[*sic*] of the School Code that the Petitioner at the time of the preparation of a Sequence of Honorable Dismissal Listing for the STAUNTON COMMUNITY

UNIT SCHOOL DISTRICT NO 6. OF MACOUPIN COUNTY in

March of the school year 2015-2016 should have been placed in

Grouping 3."

¶ 28    This appeal followed.

¶ 29                                II. ANALYSIS

¶ 30    On appeal, respondent argues (1) the circuit court erred in its interpretation of

section 24-12(b) of the Code (*id.* § 24-12(b)) and (2) the circuit court's decision was against the

manifest weight of the evidence. As we find the issue dispositive, we turn to the circuit court's

interpretation of section 24-12(b) of the Code.

¶ 31                            A. Standard of Review

¶ 32    "The process of statutory interpretation is firmly established." *MD Electrical

Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 287, 888 N.E.2d 54, 58 (2008). "The goal is to

ascertain and give effect to the intent of the legislature." *Id.* "The simplest and surest means of

effectuating this goal is to read the statutory language itself and give the words their plain and

ordinary meaning." *Id.* (citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479, 639 N.E.2d

1282, 1287 (1994)). "However, it is not sufficient to read a portion of the statute in isolation." *Id.*

We read a statute "in its entirety, keeping in mind the subject it addresses and the legislature's

apparent objective in enacting it." *Id.* (citing *Gill v. Miller*, 94 Ill. 2d 52, 56, 445 N.E.2d 330, 333

(1983)). The standard of review in the interpretation of a statute is *de novo*. *Id.* at 286.

¶ 33    B. Honorable Dismissal Under Section 24-12(b) of the Code

¶ 34    On June 13, 2011, the Governor signed into law Public Act 97-8, commonly

referred to as Senate Bill 7, which completely revamped the honorable dismissal of teachers in

Illinois by eliminating tenure and seniority as the primary means used to determine a RIF and,

instead, incorporated teaching performance and student growth into the equation. See Pub. Act 97-8 (eff. June 13, 2011) (amending 105 ILCS 5/24-12(b)). Section 24-12(b) of the Code applies to honorable dismissals where the notice of dismissal was provided during or after the 2011-12 school term. 105 ILCS 5/24-12(b) (West 2014). Specifically, section 24-12(b) dictates in what order teachers are honorably dismissed in the event of a RIF by categorizing teachers into "one or more positions for which the teacher is qualified to hold, based upon legal qualifications and any other qualifications established in a district *** job description." *Id.*

¶ 35        Teachers are then placed into one of four groupings in each position for which the teacher is qualified as follows:

"(1) Grouping one shall consist of each teacher who is not in contractual continued service and who (i) has not received a performance evaluation rating, (ii) is employed for one school term or less to replace a teacher on leave, or (iii) is employed on a part-time basis. ***

(2) Grouping 2 shall consist of each teacher with a Needs Improvement or Unsatisfactory performance evaluation rating on either of the teacher's last 2 performance evaluation ratings.

(3) Grouping 3 shall consist of each teacher with a performance evaluation rating of at least Satisfactory or Proficient on both of the teacher's last 2 performance evaluation ratings, if 2 ratings are available, or on the teacher's last performance evaluation rating, if only one rating is available, unless the teacher qualifies for placement into grouping 4.

(4) Grouping 4 shall consist of each teacher whose last 2 performance evaluation ratings are Excellent and each teacher with 2 Excellent performance evaluation ratings out of the teacher's last 3 performance evaluation ratings with a third rating of Satisfactory or Proficient." *Id.* § 24-12(b)(1)-(4).

"Among teachers qualified to hold a position, teachers must be dismissed in the order of their groupings, with teachers in grouping one dismissed first and teachers in grouping four dismissed last." *Id.* § 24-12(b).

¶ 36  Section 24-12(b) further defines the order of dismissal as follows:

"Within grouping one, the sequence of dismissal must be at the discretion of the school district or joint agreement. Within grouping 2, the sequence of dismissal must be based upon average performance evaluation ratings, with the teacher or teachers with the lowest average performance evaluation rating dismissed first. A teacher's average performance evaluation rating must be calculated using the average of the teacher's last 2 performance evaluation ratings, if 2 ratings are available, or the teacher's last performance evaluation rating, if only one rating is available ***."
*Id.*

¶ 37  On July 1, 2014, Public Act 98-648 further amended section 24-12(b) by providing:

"No more than one evaluation rating each school term shall be one of the evaluation ratings used for the purpose of determining the

- 11 -

sequence of dismissal. Except as otherwise provided in this subsection for any performance evaluations conducted during or at the end of a remediation period, if multiple performance evaluations are conducted in a school term, only the rating from the last evaluation conducted prior to establishing the sequence of honorable dismissal list in such school term shall be the one evaluation rating from that school term used for the purpose of determining the sequence of dismissal. Averaging ratings from multiple evaluations is not permitted unless otherwise agreed to in a collective bargaining agreement or contract between the board and a professional faculty members' organization. The preceding 3 sentences are not a legislative declaration that existing law does or does not already require that only one performance evaluation each school term shall be used for the purpose of determining the sequence of dismissal." Pub. Act 98-648 (eff. July 1, 2014) (amending 105 ILCS 5/24-12(b)).

¶ 38                    C. Petitioner's Honorable Dismissal

¶ 39        Section 24-12(b) of the Code applies to petitioner's honorable dismissal where respondent provided petitioner with a notice of dismissal in March 2016. See 105 ILCS 5/24-12(b) (West 2014). The collective bargaining agreement in effect during the 2015-16 school term failed to provide terms for evaluating teachers or terms regarding a RIF. The Joint Committee also failed to modify the terms for placement of a teacher in grouping two to grouping three. See *id.* § 24-12(c).

- 12 -

¶ 40 Petitioner calls into question the applicability of section 24-12(b) where she received her February 2014 summative performance evaluation rating of "Needs Improvement" prior to the effective date of the amendment to section 24-12(b). See Pub. Act 98-648 (eff. July 1, 2014) (amending 105 ILCS 5/24-12(b)). However, PERA took effect in 2010 implementing a summative performance evaluation rating based on four ratings (Pub. Act 96-861 (eff. Jan. 15, 2010) (amending 105 ILCS 5/24A-5)), and Senate Bill 7 revamped the honorable dismissal of teachers in June 2011 (Pub. Act 97-8 (eff. June 13, 2011) (amending 105 ILCS 5/24-12(b))). Respondent school district implemented the new PERA evaluation system in September 2012 prior to petitioner's February 2014 summative performance rating.

¶ 41 While the legislature amended the statutory language periodically, the amendment to section 24-12(b) in July 2014 had no bearing on petitioner's February 2014 evaluation or the use of that evaluation in making the sequence of honorable dismissal list where the RIF and notice to petitioner of the RIF took place in March 2016. Therefore, section 24-12(b) of the Code applies. We look to the plain language of section 24-12(b) to determine whether the circuit court properly interpreted and applied section 24-12(b) to petitioner's honorable dismissal.

¶ 42 In the event of a RIF, section 24-12(b) dictates in what order teachers are honorably dismissed. Specifically, in placing a teacher into a grouping on the sequence of honorable dismissal list, section 24-12(b) requires a teacher's average performance evaluation rating to be calculated using the average of the teacher's last two summative performance evaluation ratings, if two ratings are available. 105 ILCS 5/24-12(b) (West 2014).

¶ 43 Section 24-12(b) further requires that a teacher's last two summative performance evaluation ratings used to calculate the average performance evaluation rating must be from different school terms. *Id.* Additionally,

- 13 -

"[I]f multiple performance evaluations are conducted in a school term, only the rating from the last evaluation conducted prior to establishing the sequence of honorable dismissal list in such school term shall be the one evaluation rating from that school term used for the purpose of determining the sequence of dismissal." *Id.*

¶ 44 The circuit court stated in its corrected judgment that it considered for the purpose of petitioner's placement on the sequence of honorable dismissal list, two evaluations with ratings of "Proficient"—petitioner's exhibit No. 3 and petitioner's exhibit No. 4—from the same school term. Therefore, the circuit court's placement of petitioner in grouping three, "based upon the two evaluations that were conducted of Petitioner by an evaluator for the Respondent and based upon the rating received in each evaluation of proficient," was contrary to the plain language of section 24-12(b) of the Code.

¶ 45 Section 24-12(b) of the Code prohibits using two evaluations from the same school term for placement on the sequence of honorable dismissal list. "No more than one evaluation rating each school term shall be one of the evaluation ratings used for the purpose of determining the sequence of dismissal." *Id.* The circuit court ignored the plain language of the statute in using two evaluations from the 2014-15 school term and placing petitioner in grouping three based on those two evaluations reflecting ratings of "Proficient."

¶ 46 Section 24-12(b) provides additional requirements where two summative performance evaluation ratings are provided to a teacher in a single school term.

"[I]f multiple performance evaluations are conducted in a school term, only the rating from the last evaluation conducted prior to establishing the sequence of honorable dismissal list in such school term shall be the one evaluation rating

- 14 -

from that school term used for the purpose of determining the sequence of dismissal." *Id.*

¶ 47 While respondent and petitioner disagree as to whether petitioner received one or two summative performance evaluation ratings during the 2014-15 school term, with respondent arguing one summative performance evaluation rating and petitioner arguing two summative performance evaluation ratings, this inquiry is irrelevant. Even if the circuit court decided both petitioner's exhibit No. 3 and petitioner's exhibit No. 4 constituted two summative performance evaluation ratings in the 2014-15 school term, the court still could only consider the last evaluation from that school term as one of two ratings for dismissal purposes. If there is more than one evaluation in a school term, then only the last evaluation from that school term may be used. *Id.*

¶ 48 To the extent that petitioner tries to argue only one evaluation rating need be considered to determine placement on the sequence of honorable dismissal list, we find that argument to be contrary to the plain language of section 24-12(b). Here, respondent school district evaluated petitioner over multiple years; thus, two ratings are available to calculate petitioner's average evaluation rating for dismissal. See *id.*

¶ 49 The statute when read as a whole makes clear that in determining placement on the sequence of honorable dismissal list, the district determines final evaluation ratings based on the two most recent summative performance evaluation ratings and that a school district may not use more than one summative evaluation rating from any given school term. If petitioner received two summative performance evaluation ratings in one school term then only the most recent evaluation rating applies, along with a summative performance evaluation rating from a different school term. See *id.*

¶ 50 Section 24-12(b) requires that the two evaluations to be used in placing petitioner on the sequence of honorable dismissal list are the February 2014 "Needs Improvement" summative performance evaluation rating and the February 2015 "Proficient" summative performance evaluation rating. Given that respondent conducted no evaluation of petitioner in the 2015-16 school term due to her prior "Proficient" rating, petitioner's last two performance evaluation ratings taken from the 2013-14 school term and the 2014-15 school term placed petitioner in grouping two on the sequence of honorable dismissal list. "Grouping 2 shall consist of each teacher with a Needs Improvement or Unsatisfactory performance evaluation rating on either of the teacher's last 2 performance evaluation ratings." *Id.* § 24-12(b)(2).

¶ 51 The circuit court after interpreting section 24-12(b) determined respondent should have placed petitioner in grouping three on the sequence of honorable dismissal list based on petitioner's two "Proficient" summative performance evaluation ratings during the 2014-15 school term. Under the circumstances of this case, we find that the circuit court improperly interpreted and applied section 24-12(b) of the Code to petitioner's honorable dismissal. Therefore, we reverse the circuit court's judgment.

¶ 52 III. CONCLUSION

¶ 53 For the foregoing reasons, we reverse the circuit court's judgment.

¶ 54 Reversed.

| | |
|---|---|
| **Cite as:** | *Nafziger v. Board of Education of Staunton Community Unit School District No. 6*, 2019 IL App (4th) 180770 |
| **Decision Under Review:** | Appeal from the Circuit Court of Macoupin County, No. 16-MR-69; the Hon. Kenneth R. Deihl, Judge, presiding. |
| **Attorneys for Appellant:** | Susan E. Nicholas, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Champaign, and Dennis L. Weedman, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Collinsville, for appellant. |
| **Attorneys for Appellee:** | Rick Verticchio, of Verticchio & Verticchio, of Carlinville, for appellee. |